FILED
FEB 26 2008
UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| In re | Case No. 05-61316-B-13 |
| Raymond William Schmal, | DC No. RSW-1 |
| Debtor. | |

**MEMORANDUM DECISION REGARDING DEBTOR'S MOTION TO VACATE DISMISSAL AND REINSTATE CHAPTER 13 CASE**

This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of res judicata and claim preclusion.

Robert S. Williams, Esq., appeared on behalf of debtor, Raymond William Schmal (the "Debtor").

Michael H. Meyer, Esq., appeared in his capacity as the chapter 13 trustee.

This bankruptcy case was dismissed by order of this court on November 9, 2007 (the "Dismissal Order"). Now before the court is the Debtor's motion to vacate the Dismissal Order and reinstate the bankruptcy case (the "Motion to Vacate"). The Debtor argues, *inter alia*, that changes in the law effective with BAPCPA,[1] relating to the dischargeability of tax claims, will cause the Debtor significant financial hardship if he has to file a new petition to complete his reorganization. Because the Debtor's Motion to

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated *prior to* October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23 (BAPCPA).

1  Vacate is untimely, and his arguments are not supported by any evidence, or by the
2  record, the Motion will be denied.
3        This memorandum decision contains the court's findings of fact and conclusions
4  of law as required by Federal Rule of Civil Procedure 52(a), made applicable to this
5  contested matter by Federal Rule of Bankruptcy Procedure 7052.  The bankruptcy court
6  has jurisdiction over this matter under 28 U.S.C. § 1334 and 11 U.S.C. § 1307 and
7  General Orders 182 and 330 of the U.S. District Court for the Eastern District of
8  California.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

**Background.**

10        A review of the docket suggests that this bankruptcy case has been fraught with
11  difficulties and delay since the beginning.  The bankruptcy case commenced with the
12  filing of a voluntary petition under chapter 13 on October 16, 2005 - one day before the
13  effective date of the BAPCPA. The meeting of creditors under § 341 was set for
14  December 14, 2005.  For reasons that are not clear from the record, the standing chapter
15  13 trustee, M. Nelson Enmark, Esq. ("Enmark"), continued the meeting of creditors four
16  times before it was finally concluded on May 25, 2006, more than seven months after the
17  petition was filed.
18        On April 25, 2006, Enmark filed a motion to have the case dismissed ("First
19  Enmark Dismissal Motion") based on allegations of, *inter alia*, unreasonable delay, the
20  Debtor's failure to file tax returns for years 1999 through 2004, tax claims that exceeded
21  the statutory eligibility limit, and failure to make the March 2006 plan payment of $100.[2]
22  After Enmark concluded the meeting of creditors, he filed a supplemental declaration in
23  support of the First Enmark Dismissal Motion wherein he withdrew the allegation
24  regarding failure to file tax returns.  However, Enmark argued that the Debtor's chapter
25  13 plan (the "Plan") would not fund the tax claims on file by the Internal Revenue Service

---

[2] See the Declaration of M. Nelson Enmark in Support of Motion Re Pre-Confirmed Case Under 11 U.S.C. § 1307 filed on April 25, 2006.

2

("IRS") and the Franchise Tax Board and that those claims exceeded the eligibility limit under § 109(e).[3] At the hearing, on June 7, 2006, Enmark withdrew the First Enmark Dismissal Motion all together for reasons that do not appear in the record.

The next day, on June 8, 2006, Enmark filed an objection to confirmation of the Plan, based on, *inter alia*, a feasibility problem arising from the filed tax claims (the "Enmark Objection"). The Enmark Objection was later resolved after the Debtor represented to Enmark that he was not required to file at least one of the prepetition tax returns because he had not received any income that year.[4] The Debtor's Plan was not confirmed until August 17, 2006, ten months after the petition was filed.

On January 18, 2007, Enmark filed another motion to have the case dismissed ("Second Enmark Dismissal Motion"). In support of that Motion, Enmark filed a declaration stating that the Debtor had failed to make the November and December 2006, Plan payments.[5] At the hearing on the Second Enmark Dismissal Motion, on February 7, 2007, Enmark asked to withdraw the Motion on the condition that the Debtor be ordered to bring all Plan payments current by February 20, 2007, and make the February 25 payment when due. Enmark also requested an order directing that the case would be dismissed on the trustee's ex parte application and declaration, if the Debtor should fail to make all Plan payments on time for at least one year, through February 2008 (the "Ex Parte Motion"). In making that request, Enmark was obviously frustrated with the case, based in part on the Debtor's inability to make the nominal plan payments when they were due. The Debtor's counsel, Robert S. Williams, Esq. ("Williams") was present at that hearing and agreed on the record to the requested relief. A minute order setting forth

---

[3] Supplemental Declaration of M. Nelson Enmark in Support of Motion Re Pre-Confirmed Case Under 11 U.S.C. § 1307 filed on May 31, 2006.

[4] Trustee's Declaration in Support of Objection to Confirmation and Motion to Dismiss filed June 8, 2006.

[5] Declaration of M. Nelson Enmark in Support of Motion Under 11 U.S.C. § 1307 filed January 18, 2007.

3

those provisions was entered on February 9, 2007 (the "February Minute Order"). It was served by first-class mail on Williams and the Debtor on February 9, 2007.

The docket reflects no further activity in this case until October 1, 2007, when Enmark resigned as the chapter 13 trustee. He was replaced by Michael H. Meyer, Esq. ("Meyer"). On November 7, 2007, Meyer filed his Ex Parte Motion in the form of a declaration stating that the Debtor had failed to make the October 2007, Plan payment (the "October Payment"). Meyer requested dismissal pursuant to the February Minute Order. The Ex Parte Motion was served on the Debtor and Williams on November 7, 2007. There was no opposition or response. The Dismissal Order was entered on November 13, 2007. Notice of entry of the Dismissal Order was served on the Debtor, Williams, and all creditors on November 16, 2007. Again, the Debtor did not file a proximate response and he did not request that the Dismissal Order be stayed pending reconsideration or further review. Meyer prepared his Preliminary Final Report and Account, which was filed on January 7, 2008.

On December 26, 2007, about seven weeks after the entry of the Dismissal Order, the Debtor filed the Motion to Vacate which is now before the court. It was set for hearing on January 9, 2008, on notice to Meyer and all creditors. At the hearing, Meyer opposed the Motion to Vacate and agreed to submit the matter on the record. Williams argued vehemently, without any supporting evidence, that the Debtor will suffer serious financial consequences if he is forced to refile for relief under post-BAPCPA law because of his prepetition tax liability. None of that argument, or evidence, was before the court in support of the Motion to Vacate.[6] The court therefore took the matter under submission and invited Williams to submit his argument, *with supporting evidence*, in a supplemental brief. Those documents were filed on January 15, 2008. The court has

---

[6] The Motion to Vacate was based solely upon circumstances surrounding the sudden death of a close family member in March 2007, and the need to care and provide for the Debtor's mother. However, the Debtor's problems did not just begin in March 2007. By that time, Enmark had already filed two dismissal motions based on failure to make three Plan payments and this court had already entered the February Minute Order.

4

reviewed and considered the supplemental brief and Debtor's supplemental declaration.

**Analysis and Conclusions of Law.**

The Debtor argues first that his failure to make the October Payment, which triggered Meyer's submission of the Ex Parte Motion, was the result of significant personal problems in the Debtor's life, problems which had been ongoing for months. The Debtor argues that his life was "spiraling out of control" and that his failure to make the October Payment was "unintentional." He states that he has now tendered the October Payment, together with the November and December Plan payments to Meyer.

While the Debtor's devotion to family in a time of crisis is certainly commendable, the Motion to Vacate fails to address the factors which this court must consider under applicable law. Pursuant to Federal Rule of Civil Procedure 60(b) (made applicable here by Federal Rule of Bankruptcy Procedure 9024), the court may relieve a party from a final judgment or order upon a showing of (1) mistake, inadvertence, surprise, or excusable neglect, (2) newly discovered evidence, (3) fraud, or (4) any other reason justifying relief from operation of the judgment or order. The motion seeking relief on the above grounds under Rule 60(b) must be made within a reasonable time, not to exceed one year after entry of the order.

Here, the Debtor offers evidence which satisfactorily explains why he failed to make the October Payment when it was due on October 25, 2007.[7] However, the Debtor was then bound by, and Meyer's Ex Parte Motion was submitted pursuant to, the February Minute Order, which Enmark requested after bringing two prior dismissal motions, obviously out of concern for the Debtor's inability to make timely Plan payments. (The First and Second Enmark Dismissal Motions reveal that the Debtor had missed at least three Plan payments in the first 14 months of his case.) The Debtor did not request to modify, or be relieved from the February Minute Order. This is not a case

---

[7] Pursuant to this court's General Order 03-03 (effective July 1, 2003) at paragraph 5, the Debtor's chapter 13 plan payments were due to the trustee by the 25th day of each month beginning the month after the petition was filed.

5

where the Debtor inadvertently failed to get one payment to the trustee by a rigidly fixed date. The Debtor already had a history of missed or late payments. See footnote 6 supra. Meyer did not hastily act to enforce the February Minute Order, he did not submit his Ex Parte Motion until almost two weeks after the October Payment was due. The Debtor failed to make the October Payment at any time until it was tendered to Meyer in late December. Meyer properly requested the Dismissal Order pursuant to the February Minute Order, and this court is not persuaded that the case was dismissed as a result of mistake, inadvertence, surprise, excusable neglect, or fraud.

     Further, the court is not persuaded that the Motion to Vacate was filed within a reasonable time. "Reasonableness" is a factual determination which the court must make based on all of the relevant circumstances. A time that may be reasonable for the bringing of a Rule 60(b) motion in one circumstance, may be totally unreasonable in another. The Debtor failed to respond when Meyer submitted his Ex Parte Motion. After the Dismissal Order was entered, the Debtor failed to seek a stay of that Order to prevent the administrative process which follows the dismissal of a bankruptcy case; he failed to give the court any kind of notice that the Dismissal Order would be contested, and he failed to seek review of the Dismissal Order on any kind of expedited basis. All of the creditors had received notice that the case had been dismissed weeks before the Debtor filed his Motion to Vacate. Meyer had closed his books on this case and prepared his Preliminary Final Report which was filed before the time for hearing on the Debtor's Motion.

     Dismissal of a bankruptcy case is not like a typical administrative order, or a money judgment that simply declares rights which can be later reviewed. Entry of the Dismissal Order started a process by which the administration of this bankruptcy case was wound down and concluded. If the Debtor disagreed with Meyer's request for dismissal of the case, and was in fact immediately prepared to tender the October Payment, then it was incumbent on the Debtor to tender that Payment promptly and seek immediate relief. That relief should have commenced with a request to stay the Dismissal Order pending

6

further review. The Motion to Vacate should have been filed quickly and set for hearing on shortened time.[8] The Debtor's failure to bring this Motion to Vacate quickly was unreasonable and Williams' attempt to explain the delay here - set forth in his supplemental brief - is not supported by any evidence, and is unpersuasive. The Debtor's lackadaisical response to the Dismissal Order seems paradoxical to the Debtor's contention that dismissal of the case will cause him significant financial hardship.[9]

The court has also considered Williams' argument regarding the Debtor's tax liability and possible financial hardship if the Debtor has to refile under current law. Unfortunately, the supplemental pleadings filed in support of the Motion to Vacate add absolutely nothing to the evidentiary record with regard to the tax liability issue. Williams states in his supplemental brief that the Debtor owes the IRS $44,311.26 for tax years in which he failed to file a return. He argues without any evidence, citation to statutory authority, or analysis of the record, that the taxes assessed against the Debtor for unfiled tax returns, together with interest and penalties, are not dischargeable under post-BAPCPA law. Presumably, Williams is referring to § 523(a)(1)(B), as amended by BAPCPA, which makes nondischargeable a governmental claim for income taxes for which a tax return was either (1) not filed, or (2) filed within two years before the bankruptcy petition. Williams states affirmatively that the Debtor has still *not filed* some or all of his prepetition tax returns. However, the Debtor's supplemental declaration says nothing about his tax liability or the status of any unfiled tax returns.

In the absence of any evidence from the Debtor, the court has reviewed the record in an effort to find any support for Williams' argument. A review of the claims docket

---

[8] The Motion to Vacate could have been set on either the court's December 2007 Bakersfield calendar, or any one of the court's November Fresno calendars.

[9] Williams represented in his supplemental brief that the Debtor changed his mailing address, causing the mail to be returned to his office. Williams did not try to call the Debtor until some time after November 26, 2007. The Debtor did not respond to Williams with the missing payment and information for the Motion to Vacate until December 10. The Motion was not finalized and served on creditors until December 26.

shows that the IRS originally filed a proof of claim on December 9, 2005 (claim docket number 3) asserting a priority claim for $83,414.18. Included in the priority claim were "unassessed - no return" taxes and interest due for 2002, 2003, and 2004, totaling approximately $80,417.80. Claim number 3 also stated an unsecured claim in the amount of $247,558.95. Included in the unsecured claim were "unassessed - no return" taxes and interest due for the 1999, 2000 and 2001 tax years in totaling approximately $58,313.89. The IRS' initial proof of claim therefore tends to confirm that the Debtor did not file any federal tax returns before the bankruptcy, from 1999 through 2004.

However, the IRS' amended claims reveal a different story. The IRS amended its proof of claim three times (claim docket numbers 5, 10, and 12). The last two amended claims (numbers 10 and 12) omitted any reference to "unassessed - no return" liability which suggests that after the bankruptcy, the Debtor did file all of the prepetition tax returns which he was required to file. Moreover, the IRS' proofs of claim squarely contradict Williams' statement, that some tax returns have never been filed.

The last proof of claim filed by the IRS (claim docket number 12) shows a prepetition priority tax claim in the amount of $3,629.81. It shows a "Date Tax Assessed" for the previously missing 2002 and 2003 tax years, of March 27, 2006, suggesting that those tax returns were filed on or before that date. It also shows no taxes or interest due for the 2004 tax year, which is consistent with Enmark's declaration of June 8, 2006, that no taxes were due for at least one prepetiton tax year. See footnote 4 supra. Meyer's final report, filed on January 7, 2008, shows that the IRS' priority claim has already been paid in full. The record therefore suggests that dismissal of this case had no adverse affect on the Debtor with regard to the 2002 through 2004 tax years.

The remainder of the IRS' claim number 12 is stated as an unsecured claim in the amount of $45,812.86 for taxes due from tax years 1995 through 2001. Claim number 12 shows that tax returns for 1995 through 1998 were filed more than two years before commencement of the bankruptcy case, so dischargeability is not an issue with regard to those years. That leaves only tax years 1999 through 2001 for consideration.

Claim number 12 shows "unsecured" taxes and interest for 1999 totaling $6,121.34. It shows no taxes due for tax years 2000 and 2001. The "Date Tax Assessed" for these three years is July 31, 2006, which again suggests that those missing tax returns were filed on or before that date. Looking at claim number 12 in light of § 523(a)(1)(B), it appears to the court that the only portion of the Debtor's obligation to the IRS which may yet be nondischargable is about $6,000, and certainly not the catastrophic $44,000 figure stated in Williams' supplemental brief. For all of the other tax years shown on the IRS' claim, the liability has either been paid by the trustee, or the tax returns were filed more than two years before commencement of the case. Even the 1999 liability may be dischargeable if the Debtor does not refile until two years after the 1999 tax return was filed. § 523(a)(1)(B)(ii).[10]

In summary, the record suggests that Williams' "tax liability" argument is extremely exaggerated. Again, Williams failed to offer any facts or analysis to support his argument or to show that he evaluated the merits of his argument in compliance with Rule 9011.

## Conclusion.

Based on the foregoing, the court is not persuaded that entry of the Dismissal Order should be vacated based on any grounds set forth in Rule 60(b). The Debtor's "serious financial hardship" argument, based on nondischargeable income taxes, appears to be disingenuous and wrong. The Motion to Vacate will be denied.

Dated: February 26, 2008

W. Richard Lee
United States Bankruptcy Judge

---

[10]This discussion is offered solely to illustrate the analytical process that should have been offered in support of this Motion. The IRS is not a party to this contested matter and the dischargeability of its tax claim is not before the court. The court makes no findings of fact or conclusions of law as to the dischargeability of any tax liability. If necessary, that issue will have to be determined in a proper proceeding in another case.